UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RACHEAL WILSON,

              Plaintiff,

      v.

ONTARIO COUNTY SHERIFF'S
DEPARTMENT, SERGEANT TOMES,
OFFICER BORDEN, *Both Individually*,

              Defendants.

_____

**DECISION AND ORDER**

12-cv-06706   EAW

UNITED STATES DISTRICT COURT
FILED
AUG 0 8 2014
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

## INTRODUCTION

Plaintiff Racheal Wilson ("Plaintiff") is a corrections officer employed by defendant the Ontario County Sheriff's Department ("OCSD"). Plaintiff commenced the instant action on December 27, 2012, alleging that Defendants discriminated against her following the birth of her son in 2010. (Dkt. 1). In particular, Plaintiff alleges that she was not permitted to take compensated breaks in excess of her normal break time to express breast milk. Plaintiff also alleges that she was retaliated against for complaining about this purported discrimination, that she was subjected to a hostile work environment, and that she was deprived of equal protection of the laws in violation of 42 U.S.C. § 1983.

Defendants have moved to dismiss the complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 5). In the alternative, Defendants move to strike paragraphs 10-38 of the complaint. (*Id.*). Plaintiff has cross-moved for

leave to amend the complaint by substituting Ontario County as a defendant in place of the OCSD. (Dkt. 12).  For the reasons set forth below, Defendants' motion to dismiss is granted and Plaintiff's motion for leave to amend is denied as futile.  In addition, Defendants' motion to strike is denied as moot.

## BACKGROUND

Plaintiff alleges that she has been employed by the OCSD since August 22, 2001. (Dkt. 1 at ¶ 9).  Plaintiff claims that in November 2006, while she was pregnant, she was assigned to "the courthouse" but that an individual identified in the complaint as "Lt. Nolan" "sent Plaintiff back to the jail from the courthouse" because Plaintiff was pregnant and did not qualify to carry a weapon. (*Id.* at ¶¶ 10-11).  Plaintiff further alleges that she was assigned to the overnight shift during her 2006-2007 pregnancy despite having a note from her doctor stating that she should be moved to the day shift. (*Id.* at ¶¶ 13-16).  Plaintiff claims that when she returned from maternity leave in September 2007, she asked "management" how they were going to handle her "breast pumping breaks" and that she "was informed" that she would have to pump during her regular breaks. (*Id.* at ¶¶ 18-19).  Plaintiff allegedly requested in January 2008, that the OCSD institute a policy for pregnant officers to "allow them to express breast milk while pregnant [sic] during the course of the day." (*Id.* at ¶ 20).

Between her pregnancy in 2006-2007 and her subsequent pregnancy in 2009-2010, Plaintiff alleges that she advanced in her career at the OCSD.  In particular, Plaintiff alleges that she was chosen to be a field training officer, sent to field training officer school, "put in charge of the jail vehicle," chosen for the emergency response

team, chosen for the honor guard, and complemented by defendant Sergeant Charles Tomes ("Sgt. Tomes") on her performance. (*Id.* at ¶¶ 21-25).

In March 2010, when Plaintiff alleges she was seven months pregnant, Plaintiff claims she was reassigned to a "Pod" by an individual identified in the complaint as "Sgt. Lyons." (*Id.* at ¶ 28). The complaint does not explain the meaning of a "Pod." Plaintiff alleges that she informed Sgt. Lyons and Sgt. Tomes that she was worried about being assigned to a Pod because her pregnancy was interfering with her ability to climb the stairs. (*Id.* at ¶ 29). Plaintiff further alleges that she could barely walk due to her pregnancy, but "they kept putting her in a Pod setting with potentially violent inmates. . . ." (*Id.* at ¶ 30). Plaintiff alleges that she "had to take vacation days" because "they" assigned her to a particular Pod in which there were "15 minute checks and high security risk inmates." (*Id.* at ¶ 35). Plaintiff purportedly asked Sgt. Tomes if she could be given a different assignment, given the advanced stage of her pregnancy, but Sgt. Tomes allegedly told her that it would not be fair to the other officers. (*Id.* at ¶¶ 36-37). Plaintiff alleges that as a result of Sgt. Tomes' refusal to reassign her, she decided to take vacation that day, "to avoid being placed in that danger, given her vulnerable condition." (*Id.* at ¶ 37). Plaintiff alleges that in or about May 2010, her doctor placed her on light duty, and that as a result, the sergeants could not schedule her in the Pod anymore. (*Id.* at ¶ 38).

Plaintiff purportedly returned from maternity leave for her 2009-2010 pregnancy on September 25, 2010. (*Id.* at ¶ 39). Plaintiff alleges that she was subjected to discrimination upon her return from maternity leave. (*Id.* at ¶ 40). In particular, Plaintiff

alleges that in October 2010, unnamed co-workers refused to cover for her while she took a break to express breast milk, claiming that they were "too busy" and that she should "find someone else to do it." (*Id.* at ¶ 41).  Plaintiff also alleges that on October 1, 2010, Sgt. Tomes asked her how many pumping breaks she would need and of what duration. (*Id.* at ¶ 43).  Plaintiff estimated that she would require two breaks of approximately 45 minutes each. (*Id.* at ¶ 44).  Sgt. Tomes purportedly replied, "two hours for breaks?" (*Id.* at ¶ 45).  Plaintiff claims that Sgt. Tomes advised her that she would have to use her vacation, comp, or unpaid time to take breaks to express her breast milk. (*Id.* at ¶ 46).

Plaintiff allegedly complained about the "pumping issue" to her union president, Marty Lozada ("Officer Lozada"). (*Id.* at ¶ 49).  On November 10, 2010, Officer Lozada allegedly sent Plaintiff a message stating that she did not have to take annual leave to express breast milk. (*Id.* at ¶ 51).  Plaintiff also alleges that another woman employed by the OCSD, Tamela Cayward, was permitted to take breaks to express breast milk for at least a year following the births of her children. (*Id.* at ¶ 52).

On January 7, 2011, Plaintiff alleges that an individual identified in the complaint as "Sgt. Debaere" coached Plaintiff on her work and alleged "improper conduct" while covering a break for another officer.  It appears that Plaintiff denies engaging in any improper conduct. (*Id.* at ¶ 53).

On January 12, 2011, Plaintiff alleges that she sent a message to "management" asking why she had been moved to "Pod 2, where dangerous inmates were housed." (*Id.* at ¶ 54).  Approximately an hour after Plaintiff sent this message, she alleges that Sgt. Tomes stopped her in the hallway and berated her in front of Sgt. Debaere and facility

cameras on an unspecified subject. (*Id.* at ¶ 55). Plaintiff claims that she requested a copy of Sgt. Tomes' statements in writing but Sgt. Tomes refused to provide a written copy. (*Id.* at ¶ 56).

Plaintiff alleges that on January 13, 2011, Sgt. Tomes sent Plaintiff "a nasty message" regarding a complaint she made against defendant Officer Sherry Borden ("Officer Borden").[1] (*Id.* at ¶ 57). Plaintiff does not specify the content of her complaint against Officer Borden. Plaintiff also claims that on this same day, she sent a message to Sgt. Tomes asking to speak to him about the incident on January 12, 2011, when he yelled at her, but Sgt. Tomes did not respond to her message. (*Id.* at ¶¶ 58-59).

On January 16, 2011, Plaintiff claims she sent a message to an individual identified in the complaint as "Sgt. Killian" requesting help making a complaint against Officer Borden. (*Id.* at ¶ 60). On January 20, 2011, Sgt. Killian allegedly advised Plaintiff to take her complaint up the chain of command. (*Id.* at ¶ 62). At some point during this time period, Plaintiff was allegedly moved from Rover 1 to Pod 2; she claims that the stress of this move caused her milk supply to diminish. (*Id.* at ¶ 65).

On January 22, 2011, Plaintiff alleges that she sent a "request to file a hostile work environment" to Officer Lozada. (*Id.* at ¶ 66). Officer Lozada allegedly replied "?" (*Id.*). Plaintiff claims that she told Officer Lozada that she wanted a message "when it was done" and he responded, "what happened?" (*Id.* at ¶ 67).

---

[1]    Officer Borden has since married and changed her named to Sherry Kelsey. (Dkt. 5 at 1).

On January 22, 2011, and January 28, 2011, Plaintiff allegedly completed "voluntary statements" against Officer Borden. (*Id.* at ¶¶ 68-69). The complaint does not explain what a "voluntary statement" is, nor does it specify the content of Plaintiff's "voluntary statements." Plaintiff also alleges that in or about this time period, Officer Borden "stated in front of inmates, inexplicably, that Lt. Smith and Plaintiff were engaged in a torrid affair." (*Id.* at ¶ 72). The complaint does not explain who Lt. Smith is or his relationship to Plaintiff.

Plaintiff also alleges that on January 29, and 31, 2011, she "received two write-ups on an inmate that was disrespectful completed," but that this inmate was released on February 11, 2011, without any hearings. (*Id.* at ¶ 70).

Plaintiff filed her complaint on December 27, 2012. (Dkt. 1). On March 1, 2013, Defendants filed a motion to dismiss the complaint and/or to strike portions thereof. (Dkt. 5). On June 20, 2013, Plaintiff filed opposition papers to the motion and a cross-motion for leave to amend the complaint through her counsel.[2] (Dkt. 11, 12). Defendants filed reply papers in further support of their motion on June 28, 2013 (Dkt. 14) and opposition papers to Plaintiff's cross-motion on July 3, 2013 (Dkt. 15). Thereafter, on January 15, 2014, this case was transferred to the undersigned. (Dkt. 17).

---

[2]   Plaintiff was represented by counsel at the time of the filing of her complaint, opposition submitted in response to the motion to dismiss, and motion for leave to amend. Plaintiff's counsel was subsequently permitted to withdraw due to her suspension. (Dkt. 16).

## DISCUSSION

### I.    Legal Standard

In considering a motion to dismiss, a court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the motion "'accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("The plausibility standard is not akin to a probability requirement. A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.") (citations and internal quotation marks omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal

quotation marks and citations omitted).  Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (internal quotation marks omitted).

With respect to Plaintiff's motion for leave to amend (Dkt. 12), Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Id*.

## II.   Defendants' Motion to Dismiss

### A.   Claims Against the OCSD

As a threshold matter, Defendants argue that the OCSD is not a proper defendant in this matter because "[i]t is well settled that, under New York law, 'departments are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" *Kamholtz v. Yates County*, No. 08-CV-6210, 2008 WL 5114964, at *9 (W.D.N.Y. Dec. 3, 2008) (quoting *Caidor v. M&T Bank*, No. 5:05-CV-297(FJS)(GJD), 2006 WL 839547, at *2 (N.D.N.Y. March 27, 2006)).  "A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v.*

*Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department).

Plaintiff appears to concede this point, inasmuch as she has moved for leave to amend the complaint to substitute Ontario County as a defendant in place of the OCSD. (Dkt. 12). The merits of Plaintiff's motion for leave to amend are considered in Part III of this Decision and Order. To the extent that Plaintiff seeks to assert any claims against the OCSD, those claims are deficient as a matter of law and are dismissed.

**B.      Claims Against Sgt. Tomes and Officer Borden**

Defendants have also moved to dismiss the claims against Sgt. Tomes and Officer Borden in their entirety. Although the allegations in the complaint are unclear on this point,[3] the Court construes Plaintiff's first cause of action as a claim of disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* ("Title VII") as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"); Plaintiff's second cause of action as a claim of a hostile work environment in violation of Title VII, as amended by the PDA; and Plaintiff's third cause of action as a claim of retaliation in violation of Title VII, as amended by the PDA. The

---

[3]      Plaintiff's complaint is drafted as though a separate cause of action exists under the Pregnancy Discrimination Act of 1978. (*See* Dkt. 1 at 12). This is not the case. "The Pregnancy Discrimination Act . . . is not a basis for [a] claim independent of Title VII's prohibition against gender discrimination. The Act is a definitional amendment . . . [that] amended Title VII to expressly include discrimination on the basis of pregnancy within the prohibition against gender discrimination." *O'Bar v. Borough of Naugatuck*, No. Civ.3:01CV867(PCD), 2002 WL 32769183, at *4 n.6 (D. Conn. Dec. 3, 2002). On this motion to dismiss, the Court will read the complaint in the light most favorable to Plaintiff as set forth above.

Court considers each of the claims against these individual defendants below, in addition to Plaintiff's § 1983 equal protection claim and Plaintiff's punitive damages claim.

### 1.    Title VII Claims

There is no individual liability under Title VII. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("We have . . . determined that the remedial provisions of Title VII . . . do not provide for individual liability."); *Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 12-CV-725S, 2014 WL 1671580, at *4 (W.D.N.Y. Apr. 22, 2014) ("[T]here is no individual liability under Title VI. . . ."). As such, neither Sgt. Tomes nor Officer Borden, both of whom are expressly denoted in the complaint as having been sued individually (Dkt. 1 at 1), can be held liable to Plaintiff on any of her Title VII causes of action. Plaintiff does not respond to Defendants' arguments as to this point, effectively conceding that her Title VII claims cannot be asserted against the individual defendants. As a result, Defendants' motion to dismiss is granted as to Plaintiff's Title VII claims (the first, second, and third causes of action) against Sgt. Tomes and Officer Borden.

### 2.    Equal Protection Claim (§ 1983)

Plaintiff's fourth cause of action alleges that Defendants have violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983, due to "the sexual harassment and retaliation suffered by Plaintiff at the hands of her supervisors. . . ." (Dkt. 1 at ¶ 96).

"To state a claim for an equal protection violation, [a plaintiff] must allege that a government actor intentionally discriminated against them on the basis of race, national

origin or gender." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999).    A plaintiff alleging an equal protection violation "must plead that '(1) [she], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [her].'" *Roper v. Hynes*, No. 05 CIV. 7664 (WHP), 2006 WL 2773032, at *10 (S.D.N.Y. Sept. 27, 2006) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)) (alterations in original).

### a.    Officer Borden

At best, the allegations in the complaint concerning Officer Borden are sparse. Plaintiff alleges that on January 13, 2011, Sgt. Tomes sent Plaintiff "a nasty message" regarding a complaint she made against defendant Officer Borden.  (Dkt. 1 at ¶ 57). Plaintiff does not specify the content of her complaint against Officer Borden, nor does she allege any conduct by Officer Borden in response to or regarding this complaint.

On January 22, 2011, and January 28, 2011, Plaintiff allegedly completed "voluntary statements" against Officer Borden.  (*Id.* at ¶¶ 68-69).  Again, the complaint says nothing about the content of these "voluntary statements" and does not explain what conduct by Officer Borden allegedly prompted Plaintiff to complete them.  The sole concrete allegation against Officer Borden is that in or about January 2011, Officer Borden "stated in front of inmates, inexplicably, that Lt. Smith and Plaintiff were engaged in a torrid affair." (*Id.* at ¶ 72).  The complaint does not explain who Lt. Smith is or what his relationship was to Plaintiff.

A single statement that two co-workers were allegedly involved in a consensual affair is simply not a constitutional matter, especially where, as is the case here, there are no other allegations against Officer Borden that would tend to establish discriminatory animus. *See Brant v. Cnty. of Dutchess*, No. 05-CV-10590 (KMK), 2008 WL 418379, at *6 (S.D.N.Y. Feb. 11, 2008) ("comments by coworkers about an extramarital affair do not inherently constitute conduct motivated by gender animus") (collecting cases). "Even if embarrassing or even humiliating, a statement that an employee is having a consensual relationship with a co-worker cannot be construed as discrimination or harassment on the basis of sex absent some additional showing, such as that the plaintiff was singled out for such comments because of his or her gender." *Dellefave v. Access Temps., Inc.*, No. 99 CIV. 6098 RWS, 2001 WL 25745, at *7 (S.D.N.Y. Jan. 10, 2001) (citation omitted).  The facts as alleged by Plaintiff do not plausibly state a claim that Officer Borden violated Plaintiff's constitutional right to equal protection of the laws.

### b.    Sgt. Tomes

With respect to Sgt. Tomes, Plaintiff alleges the following:  in March 2010, when Plaintiff was allegedly seven months pregnant, Plaintiff claims she informed Sgt. Tomes that she was worried about being assigned to a Pod because her pregnancy was interfering with her ability to climb the stairs.   (Dkt. 1 at ¶ 29).  Plaintiff further alleges that she could barely walk due to her pregnancy, but "they kept putting her in a Pod setting with potentially violent inmates. . . ." (*Id.* at ¶ 30).  Plaintiff purportedly asked Sgt. Tomes if she could be given a different assignment, given the advanced stage of her pregnancy, but Sgt. Tomes allegedly told her that it would not be fair to the other

officers.  (*Id.* at ¶¶ 36-37).  Plaintiff alleges that as a result of Sgt. Tomes' refusal to reassign her, she decided to take vacation that day, "to avoid being placed in that danger, given her vulnerable condition." (*Id.* at ¶ 37).

Plaintiff also alleges that on October 1, 2010, following her return from maternity leave, Sgt. Tomes asked her how many breaks she would need to express breast milk and of what duration.  (*Id.* at ¶ 43).  Plaintiff estimated that she would require two breaks of approximately 45 minutes each. (*Id.* at ¶ 44).  Sgt. Tomes purportedly replied, "two hours for breaks?"  (*Id.* at ¶ 45). Plaintiff claims that Sgt. Tomes advised her that she would have to use her vacation, comp, or unpaid time to take her requested 45-minute breaks to express her breast milk.  (*Id.* at ¶ 46).

Plaintiff also alleges that on January 12, 2011, Sgt. Tomes stopped her in the hallway and berated her about an unspecified subject.  (*Id.* at ¶ 55).  Plaintiff claims that she asked for a copy of Sgt. Tomes' statements in writing but Sgt. Tomes refused to provide a written copy.   (*Id.* at ¶ 56).

Finally, Plaintiff alleges that on January 13, 2011, Sgt. Tomes sent Plaintiff "a nasty message" regarding a complaint she made against Officer Borden.  (*Id.* at ¶ 57). Plaintiff also claims that on this same day, she sent a message to Sgt. Tomes asking to speak to him about the incident on January 12, 2011, when he allegedly berated her, but Sgt. Tomes did not respond to her message. (*Id.* at ¶ 59).

Based on the allegations set forth above, Plaintiff has not adequately pleaded a constitutional violation by Sgt. Tomes.  With respect to Sgt. Tomes' alleged refusal to reassign Plaintiff in March 2010, Plaintiff does not allege that similarly situated, non-

pregnant employees were permitted to request reassignments, whether based on temporary physical incapacities or not. A plaintiff generally must allege that she was treated differently than similarly situated individuals to state an equal protection violation. *See Roper v. Hynes*, No. 05 CIV. 7664 (WHP), 2006 WL 2773032, at *10 (S.D.N.Y. Sept. 27, 2006).

It is also notable that "the PDA does not require employers to extend any benefit to pregnant women that they do not already provide to other disabled employees. Nor does the plain text of the PDA compel an employer to prefer for alternative employment an employee who, because of pregnancy, is unable to perform her full range of duties." *Gratton v. Jetblue Airways*, No. 04 CIV. 7561 (DLC), 2005 WL 1251786, at *7 (S.D.N.Y. May 25, 2005) (internal quotations and citations omitted) (denying motion to dismiss where plaintiff alleged that supervisors required a doctor's note from her but not other employees and denied her the opportunity to work non-evening hours while advertising such opportunities to non-pregnant employees); *see also Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994) ("The Pregnancy Discrimination Act does not . . . require employers to offer maternity leave or take other steps to make it easier for pregnant women to work. . . .") (emphasis added). The requirements of the PDA are relevant here because "when § 1983 is used as a parallel remedy with Title VII in a discrimination suit . . . the elements of the substantive cause of action are the same under both statutes." *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996); *see also Feingold v. N.Y.*, 366 F.3d 138, 159 (2d Cir. 2004) (the elements of an equal protection claim are "generally the same" as the elements of a Title VII claim "and the two must stand or fall

- 14 -

together"). Plaintiff did not have a free-standing right to a work reassignment because of her pregnancy, and she has not alleged that other, non-pregnant employees were treated preferentially with regard to work assignments.

Similarly, there is no constitutional right to respectful treatment by a supervisor. The allegations that Sgt. Tomes berated Plaintiff with respect to an unspecified topic on a single occasion, and that one day later he sent her a "nasty message" regarding her complaint about a co-worker do not establish the kind of "severe or pervasive" conduct that would violate Plaintiff's clearly established rights. *See Jemmott*, 85 F.3d at 67 ("a plaintiff must prove discrimination that was 'sufficiently severe or pervasive' to alter the conditions of his employment in order to prevail on a hostile work environment claim" under Title VII or the Equal Protection Clause) (citation omitted). There are no allegations in the complaint supporting the conclusion that the two incidents involving Sgt. Tomes' allegedly harsh treatment of Plaintiff were motivated by or had any relation to plaintiff's gender and/or pregnancy. Even assuming *arguendo* that the complaint supported the inference that Sgt. Tomes' behavior was motivated by Plaintiff's gender and/or pregnancy, two incidents of harsh behavior within two days are insufficient, as a matter of law, to constitute the type of hostile work environment that would violate Plaintiff's right to equal protection. *See, e.g., Negron v. City of N.Y.*, No. 10 CV 2757(RRM)(LB), 2011 WL 4737068, at *15 (E.D.N.Y. Sept. 14, 2011), *report and recommendation adopted*, 2011 WL 4729754 (E.D.N.Y. Oct. 6, 2011) (dismissing equal protection claim based on hostile work environment where objectionable behavior lasted at most for several weeks); *see also Coley-Allen v. Strong Health*, 828 F. Supp. 2d 582,

- 15 -

587 (W.D.N.Y. 2011) (isolated acts or occasional episodes are insufficient as a matter of law to constitute a hostile work environment).

Finally, with respect to Sgt. Tomes' alleged statement that Plaintiff would have to use her vacation, comp, or unpaid time to take breaks to express her breast milk, Plaintiff did not have a right, constitutional or otherwise, to additional compensated pumping breaks. The law regarding a post-partum employee's right under Title VII to express breast milk in the workplace is not particularly clear. Several federal courts have held that the PDA's protections do not extend to breast-feeding at all. Indeed, the Sixth Circuit Court of Appeals observed in 2004 that, "no judicial body thus far has been willing to take the expansive interpretive leap to include rules concerning breast-feeding within the scope of sex discrimination." *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 439 (6th Cir. 2004).

For example, in *McNill v. N.Y.C. Dep't of Corr.*, 950 F. Supp. 564 (S.D.N.Y. 1996), the plaintiff had been deprived of certain employment benefits because she had been absent from work due to her need to breast-feed her son, who suffered from a malformation of his palate and lip that rendered breast-feeding medically necessary. *Id.* at 569. The court granted summary judgment to defendant on the basis that plaintiff's need to breast-feed her child did not fall within the scope of the PDA. *Id.* at 570.

In *Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305 (S.D.N.Y. 1999), the plaintiff alleged that her employer had failed to accommodate her desire to express breast milk at work. *Id.* at 309. The court granted summary judgment to the employer, holding that "if

breast pumping is to be afforded protected status, it is Congress alone that may do so."
*Id.* at 311.

In *Falk v. City of Glendale*, No. 12-CV-00925-JLK, 2012 WL 2390556 (D. Colo.
June 25, 2012), plaintiff alleged that she was unable to take breaks to express breast milk,
but did not allege that her non-lactating colleagues were treated more favorably.  *Id.* at
*1.  The court dismissed the complaint because "[t]he Pregnancy Discrimination Act
does not require any affirmative accommodations; it simply prohibits employers from
treating pregnancy-related conditions less favorably than other medical conditions."  *Id.*
at * 4 (quotation omitted).

In recent years, the law has arguably evolved.  In 2013, the Fifth Circuit Court of
Appeals held that an adverse employment action against a woman because she was
lactating or expressing milk violated Title VII.  *E.E.O.C. v. Houston Funding II, Ltd.*, 717
F.3d 425, 428 (5th Cir. 2013).  However, even in the *Houston Funding* decision, the
concurring opinion stated that "[t]he panel opinion does not cast doubt on the holdings of
those cases rejecting . . . claims [of women who wanted to use a breast pump at work]"
and that "if [plaintiff] intended to request special facilities or down time during work to
pump or 'express' breast milk, she would not have a claim under Title VII or the PDA. . .
."  *Id.* at  430 (Jones, J., concurring).  *Cf. E.E.O.C. v. Vamco Sheet Metals, Inc.*, No. 13
Civ. 6088(JPO), 2014 WL 2619812, at *6 (S.D.N.Y. June 5, 2014) ("Where a plaintiff's
claim focuses on adverse employment acts or conditions relating to her lactation breaks,
as opposed to an alleged failure to accommodate a disability, an employer may be liable
under Title VII.").

As a result, Plaintiff would arguably have a claim against Sgt. Tomes had he told her she could not use her regular breaks to pump breast milk, or if he had denied her any other benefit of her employment based on her status as a lactating mother. However, that is not what is alleged in this case. Plaintiff's allegations make it clear that Sgt. Tomes' sole action with respect to Plaintiff's request for pumping breaks was to inform her that she could not have two additional compensated 45-minute breaks per day. Sgt. Tomes' position was consistent with the law. *See* Fair Labor Standards Act, 29 U.S.C. § 207(r) (requiring an employer to provide "reasonable break time" to express break milk and an appropriate location for doing so, but not requiring employer to compensate the employee "for any work time spent for such purposes"); *see also* New York Labor Law § 206-c ("An employer shall provide reasonable <u>unpaid</u> break time or permit an employee to use paid break time or meal time each day to allow an employee to express breast milk for her nursing child for up to three years following child birth.") (emphasis added).

As a result, Plaintiff's complaint fails to state a § 1983 claim as to Sgt. Tomes.

### 3.    Punitive Damages

Plaintiff's fifth and final cause of action purports to be against Sgt. Tomes and Officer Borden for punitive damages. (Dkt. 1 at ¶¶ 101-103) "[P]unitive damages are a remedy and not a separate cause of action." *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013). Here, Plaintiff has not adequately pled any cause of action for which punitive damages would be an available remedy. As such, Defendants' motion to dismiss is granted as to Plaintiff's fifth cause of action.

### III.   Plaintiff's Cross-Motion for Leave to Amend

Plaintiff has cross-moved for leave to amend the complaint.  (Dkt. 12).  The sole difference between the proposed amended complaint and the current complaint is that the proposed amended complaint substitutes "Ontario County" as a defendant in place of the OCSD.  (*See* Dkt. 12-2).

"The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Id.*  Here, Defendants oppose amendment of the complaint on the grounds of undue delay and futility.  (Dkt. 15 at 1).

### A.   Undue Delay

Plaintiff waited until June 20, 2013, to file her cross-motion for leave to amend. (Dkt. 12).  Plaintiff's former counsel submitted a sworn declaration claiming that Plaintiff "was first placed on notice that 'Ontario County' was the correct named defendant . . . when Defendants' filed its [sic] Motion to Dismiss or Strike Plaintiff's original complaint on March 1, 2013."  (Dkt. 12-2 at ¶ 5).  It is not credible that Plaintiff's former counsel was unaware that the OCSD, as an administrative arm of a municipality, was not subject to suit.  Not only is this a well-established precept of law, but Plaintiff's former counsel's law firm had represented a plaintiff whose claims against the Yates County Sheriff's Department were dismissed on this very basis.  *See Kamholtz v. Yates Cnty.*, No. 08-CV-

6210, 2008 WL 5114964, at *9 (W.D.N.Y. Dec. 3, 2008), *aff'd*, 350 F. App'x 589 (2d Cir. 2009).

Moreover, Defendants have submitted documentary evidence demonstrating that Plaintiff's former counsel's factual representations are false.   Defendants' counsel has attached to her sworn declaration a faxed letter to Plaintiff's former counsel dated February 15, 2013, in which Defendants' counsel explained that "the Ontario County Sheriff's Office cannot be separately sued" and that the time period in which to sue Ontario County had lapsed. (Dkt. 15-1 at 4).   This fax was received by Plaintiff's former counsel's office on February 15, 2013. (*Id.* at 5).   Plaintiff's former counsel was thus on notice that the OCSD was not the proper defendant in this matter before Defendants filed their motion to dismiss on March 1, 2013, and at least four months before Plaintiff finally sought leave to amend.   Plaintiff's counsel's knowledge that the OCSD was not a proper defendant in this matter is imputed to Plaintiff. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) ("'[a client] has notice of a fact if his [attorney] has knowledge of the fact, reason to know it or should know it, or has been given a notification of it'") (quoting Restatement (Second) of Agency § 9(3) (1958)).

Defendants contend that Plaintiff's decision to ignore the notice provided on February 15, 2013, that the OCSD was not a proper party to this action and that the deadline for filing claims against Ontario County had expired unjustly gave Ontario County the impression that Plaintiff intended to forego her claims against it.   It is

inexplicable why Plaintiff decided to (1) sue the wrong party in the first instance[4] and (2) wait four months to seek leave to amend after having been informed that she had sued the wrong party. *See Meyer v. First Franklin Loan Servs., Inc.*, No. 5:08CV1332 (GTS/GHL), 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010) (denying leave to amend where plaintiff was put on notice on May 6, 2009, that he had not sued the proper party but waited until November 9, 2009, to seek leave to amend).

However, given the fact that Plaintiff did name the OCSD and its employees as defendants, and the fact that she named Ontario County as the respondent in the charge filed with the Equal Employment Opportunity Commission ("EEOC"), the Court questions any resulting prejudice to Ontario County resulting from this undue delay. *See Oneida Indian Nation of N.Y. State v. Cnty. of Oneida, N.Y.*, 199 F.R.D. 61, 74 (N.D.N.Y. 2000) ("[G]enerally, even unexcused delay . . . will not bar amendment if no prejudice will ensue to the other parties.") (quotation and citation omitted).  Particularly in view of the Court's findings with respect to the futility of Plaintiff's proposed amendment, the Court declines to deny the cross-motion for leave to amend on timeliness grounds.

**B.    Futility**

Plaintiff's proposed amended complaint fails to state a cause of action and, therefore, any amendment would be futile. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (amendment is futile if the proposed amended complaint does not state a claim upon which relief can be granted).  As to

---

[4]    Plaintiff plainly knew that Ontario County was the proper defendant in this matter, inasmuch as her administrative charge was filed against Ontario County. (Dkt. 5-2 at 3).

proposed defendants Sgt. Tomes and Officer Borden, the Court has explained in detail above why Plaintiff has failed to state a claim as to these individuals.  The proposed amended complaint does not enhance (or change in any way) the allegations against these defendants.

The allegations set forth in the proposed amended complaint also do not state a viable claim as to proposed defendant Ontario County.  As in the original complaint, the proposed amended complaint purports to set forth five causes of action:  a cause of action for gender-based disparate treatment under Title VII, as amended by the PDA; a cause of action for a hostile work environment in violation of Title VII, as amended by the PDA; a cause of action for retaliation, Title VII, as amended by the PDA; a § 1983 cause of action for violation of the Equal Protection Clause; and a cause of action for punitive damages as to the individual defendants only.  None of these proposed causes of action could withstand a motion to dismiss for failure to state a claim.

### 1.  Disparate Treatment

"It is well established that to state a disparate treatment claim under Title VII  the plaintiff must demonstrate 1) that she belongs to a protected class; 2) that she suffered adverse employment action; and 3) the adverse employment action occurred 'in circumstances giving rise to an inference of . . . discrimination.'"  *Yaba v. Roosevelt*, 961 F. Supp. 611, 617-18 (S.D.N.Y. 1997) (quoting *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464 (2d Cir. 1989)).

A plaintiff sustains an adverse employment action if she endures a "materially adverse change in the terms and conditions of employment."  *Galabya v. N.Y.C. Bd. of*

*Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). To be "materially adverse," a change in working conditions "might be indicated by a termination of employment, . . . a material loss of benefits, . . . or other indices . . . unique to a particular situation," and must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks omitted and emphasis added).

As an initial matter, many of the alleged conduct about which Plaintiff complains would be time barred. The complaint contains significant information regarding events that occurred prior to September 24, 2010. (*See* Dkt. 1 at ¶¶ 10-38). Plaintiff cannot base her Title VII claims of disparate treatment on these events because she filed her charge with the EEOC on July 21, 2011 (Dkt. 5-2 at 3),[5] and "[a]n aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." *Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004). Plaintiff concedes this point, stating that "Plaintiff's complaints of discrete actions in excess of 300 days prior to filing her July, 2011 charge of discrimination are not actionable per se. . . ." (Dkt. 11 at 15).

Viewing the timely allegations of the proposed amended complaint in the light most favorable to Plaintiff, she has not alleged that she suffered an adverse employment action. Plaintiff alleges she suffered the following actions after her return from maternity

---

[5]    Plaintiff's complaint does not state the date of her EEOC charge. (Dkt. 1 at ¶ 2). However, an EEOC charge may be considered in connection with a motion to dismiss where, as is the case here, the EEOC charge is referred to and relied upon in the complaint. *See Briggs v. N.Y. State Dep't of Transp.*, 233 F. Supp. 2d 367, 372 n.1 (N.D.N.Y. 2002).

leave on September 25, 2010:  unidentified co-workers told Plaintiff they were too busy and/or otherwise unable to give her breaks to express breast milk (Dkt. 12-2 at ¶ 41); Sgt. Tomes told her she would have to use vacation, comp, or unpaid time if she wished to take two 45-minute breaks per shift to express breast milk (*id.* at ¶ 46); she was coached for allegedly improper conduct (*id.* at ¶ 53); she was reassigned from the Rover to the Pod, where "dangerous inmates" were allegedly housed (*id.* at ¶ 54); Sgt. Tomes berated her in the hallway and sent her a nasty message (*id.* at ¶¶ 55, 57); and an inmate was released before a hearing was conducted on write-ups Plaintiff had completed (*id.* at ¶ 70).  None of these incidents qualifies as an adverse employment action.  As a result, it would be futile to allow Plaintiff to amend her complaint to assert a disparate treatment claim against the County of Ontario.

### a.      Break Times for Expressing Breast Milk

With respect to Plaintiff's claims regarding breaks for expressing breast milk, it is clear from the complaint that Plaintiff sought paid breaks beyond her normal break time in order to express breast milk.  (*See* Dkt. 1 at ¶¶ 43-49).  In fact, Plaintiff confirms that she was told that she would only have to use her vacation/comp time if she was over her normal break time.  (*See id.* at ¶¶ 19; 49).  An employer is not required to provide a lactating employee with paid breaks in which to express breast milk.  *See* Fair Labor Standards Act, 29 U.S.C. § 207(r) (requiring an employer to provide "reasonable break time" to express break milk and an appropriate location for doing so, but not requiring employer to compensate the employee "for any work time spent for such purposes"); *see also* New York Labor Law § 206-c.

Here, Plaintiff does not allege that she was prevented from expressing breast milk. Rather, she complains about her employer's and co-workers' alleged less than enthusiastic reaction to her request for two 45-minute breaks for the purpose of pumping, and she similarly complains about being told that she would have to use vacation time for the extra breaks.  (Dkt. 1 at ¶¶ 41, 45-46).  Plaintiff does not allege that others who were similarly situated but were not lactating were given more break time without the need to exhaust vacation time.

In that regard, *Falk v. City of Glendale*, No. 12-CV-00925-JLK, 2012 WL 2390556 (D. Colo. June 25, 2012), is instructive.  In *Falk*, the plaintiff alleged that she had requested a space and break time so she could express breast milk.  *Id.* at *1. However, plaintiff was not provided with a private space and her ability to take pumping breaks was limited by understaffing.  *Id.*  The court dismissed plaintiff's claim for discrimination based on pregnancy, explaining that "[t]he Pregnancy Discrimination Act does not require any affirmative accommodations, it simply prohibits employers from treating pregnancy-related conditions less favorably than other medical conditions."  *Id.* at *4 (quotation omitted).   The court further explained that "[i]t is possible that discrimination could be shown in a case involving lactation . . . [for example,] if other coworkers were allowed to take breaks to use the restroom while lactating mothers were banned from pumping," but a claim for discrimination was not viable where plaintiff did not allege "that her non-lactating coworkers were treated more favorably."  *Id.*

Plaintiff's proposed amended complaint suffers from the same flaw as the complaint in *Falk*.  Plaintiff has not alleged that she was prohibited from expressing

- 25 -

breast milk during her regular breaks, nor has she alleged that her non-lactating co-workers were permitted to take breaks that she was not.  Most significantly, Plaintiff has not alleged that her employer's failure to provide her with additional paid breaks represented a deviation from the previously existing terms and conditions of her employment.   Plaintiff's employer's alleged refusal to provide her with additional, compensated breaks for the purpose of expressing breast milk simply does not rise to the level of an adverse employment action under the circumstances alleged in the proposed amended complaint and cannot serve as the basis for a Title VII claim.

### b.    Coaching of Plaintiff

Plaintiff's alleged "coaching" for unspecified improper conduct also does not qualify as an adverse employment action.   Negative performance evaluations, formal reprimands, and counseling memoranda are not adverse employment actions for purposes of a disparate treatment claim unless accompanied by negative repercussions such as reduction in pay or an injury to a plaintiff's ability to secure future employment. *Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys. (Boces)*, 791 F. Supp. 2d 332, 337 (W.D.N.Y. 2011); *see also Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 479 (2d Cir. 2009) (negative performance memorandum with no resulting change in work conditions is not an adverse employment action); *Ludwig v. Rochester Psychiatric Ctr.*, 550 F. Supp. 2d 394, 398 (W.D.N.Y. 2008), *aff'd*, 347 F. App'x 685 (2d Cir. 2009) (counseling write-ups were not adverse employment actions). The proposed amended complaint gives no detail about the "coaching" that Plaintiff allegedly received and does not contain any allegations supporting the inference that this "coaching" materially

changed the terms of Plaintiff's employment.  As a result, the "coaching" is not an adverse employment action.

### c.      Reassignment from the Rover to the Pod

The allegations in the proposed amended complaint similarly do not support an inference that Plaintiff's alleged reassignment from the Rover to the Pod was an adverse employment action.  Although Plaintiff alleges that "dangerous inmates" were housed in the Pod, Plaintiff does not allege that her job duties in the Pod were materially different from her job duties in the Rover, that having been transferred to the Pod negatively impacted her opportunities for advancement, that her pay and/or benefits were changed as a result of the transfer, or that the terms and conditions of her employment were in any other way negatively impacted by this shift in her job responsibilities.

A "pure lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Adeniji v. Admin. for Children Serv., N.Y.C.*, 43 F. Supp. 2d 407, 426 (S.D.N.Y. 1999) (internal citations omitted).  "[T]he mere fact that an employee has been transferred or that his job responsibilities have changed is not in itself sufficient to show an adverse change in working conditions."  *Cooper v. N.Y. State Dep't of Human Rights*, 986 F. Supp. 825, 828 (S.D.N.Y. 1997).

In *Eldridge v. Rochester City School District*, 968 F. Supp. 2d 546 (W.D.N.Y. 2013), plaintiff, a teacher, alleged that she had been threatened with transfer to "a less desirable school."  *Id.* at 558-559.  The court held that this was not an adverse employment action in part because "a transfer which does not include a loss of salary or

benefits, or some other setback to the plaintiff's career, does not constitute an adverse employment action." *Id.* at 558 (quotation omitted); *see also Murphy v. Bd. of Educ. of Rochester City Sch. Dist.,* 273 F. Supp. 2d 292, 304 (W.D.N.Y. 2003), *aff'd,* 106 F. App'x 746 (2d Cir. 2004) (although plaintiff was subjectively "devastated" by his transfer, it was not an adverse employment action because it "did not result in any change in his job description, days or hours of employment, duties, salary or benefits, or opportunities for promotion").

Plaintiff's preference to work in the Rover rather than in the Pod is insufficient to support the conclusion that her transfer was an adverse employment action. Plaintiff has not alleged facts in the complaint from which the Court can conclude that her transfer caused Plaintiff to suffer "a materially significant disadvantage." *Murphy,* 273 F. Supp. 2d at 305 (quotation omitted). Plaintiff's transfer thus cannot form the basis for a Title VII disparate treatment claim.

### d.  Nastiness

Sgt. Tomes having allegedly been harsh and "nasty" to Plaintiff on two occasions also plainly does not rise to the level of an adverse employment action. "Unfair criticism and other unpleasant working conditions are not adverse employment actions. . . ." *Meder v. City of New York,* No. 05 CV 919 JG, 2007 WL 1231626, at *4 (E.D.N.Y. Apr. 27, 2007); *see also Smalls v. Allstate Ins. Co.,* 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[B]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they

[do] not have a material impact on the terms and conditions of Plaintiff's employment.")
(quotation omitted).

### e.    Inmate complaint

Finally, the alleged failure to follow up on the two complaints Plaintiff filed
regarding an inmate having been "disrespectful" is not an adverse employment action.
Plaintiff does not allege that this failure to follow up had a material impact on the terms
and conditions of her employment, nor does she allege any facts that would permit the
Court to infer that it had such an impact.

### 2.    Hostile Work Environment

Plaintiff's proposed amended complaint also does not state a claim for a hostile
work environment.  "To state a claim for a hostile work environment in violation of Title
VII, a plaintiff must plead facts that would tend to show that the complained of conduct:
(1) 'is objectively severe or pervasive — that is, . . . creates an environment that a
reasonable person would find hostile or abusive'; (2) creates an environment 'that the
plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an
environment because of the plaintiff's sex.'"  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.
2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)).

The proposed amended complaint alleges that Sgt. Tomes was harsh and "nasty"
to Plaintiff on two occasions within the span of two days, and that Officer Borden stated
in front of inmates that Plaintiff and Lt. Smith were having a "torrid affair." (Dkt. 12-2 at
23).  As a matter of law, these allegations are insufficient to state a hostile work
environment claim.

First, as discussed in Part II.B.2 of this Decision and Order, there are no allegations in the proposed amended complaint tying these alleged incidents to Plaintiff's gender and/or pregnancy. *See Dowrich-Weeks v. Cooper Square Realty, Inc.,* 535 F. App'x 9, 13 (2d Cir. 2013) (affirming dismissal of hostile work environment claim where plaintiff had not "presented sufficient factual allegations to suggest that the harassment she faced was rooted in her sex or any other protected characteristic") (quotation omitted).

Second, the three isolated incidences of disrespectful treatment alleged by Plaintiff are insufficiently severe or pervasive to constitute a hostile work environment. *See id.* (allegations did not "rise to the level of frequency or severity necessary to establish a hostile work environment claim"); *Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 403 (S.D.N.Y. 2012) (dismissing hostile work environment claim because alleged incidents were minor and episodic); *Missick v. City of N.Y.*, 707 F. Supp. 2d 336, 355 (E.D.N.Y. 2010) ("a pattern of simple discourtesy, without more, has consistently been held insufficient to trigger hostile work environment protections under state or federal law").

The allegations in the proposed amended complaint are insufficient, as a matter of law, to state a hostile work environment claim against Ontario County. Thus, Plaintiff's proposed amendment to the second cause of action is futile.

### 3.    Retaliation

The proposed amended complaint also attempts to allege a retaliation cause of action. To establish a case of retaliation, a plaintiff must allege "participation in

- 30 -

protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991).

Plaintiff's proposed retaliation claim fails as a matter of law because Plaintiff has failed to allege that she engaged in protected activity known to the Defendants.   To qualify as protected activity, an employee's complaint must have been based on "a good faith, reasonable belief that [the employee] was opposing an employment practice made unlawful by Title VII." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quotation omitted).   Here, in terms of complaints, Plaintiff alleges: (1) that she "refused to complain about [her] mistreatment (Dkt. 12-2 at ¶ 42); (2) that she took the issue of being asked to use vacation/comp time for pumping breaks to her union president, Officer Lozada (*id*. at ¶¶ 47, 49); (3) that she "made [a] complaint on Officer Borden" about an unspecified subject (*id*. at ¶ 57); (4) that she made a complaint to her union representative Renee Chichester, presumably about the pumping break issue, and that Chichester told her to file a grievance for a hostile work environment (*id*. at ¶ 61); (5) that she sent a request to "file a hostile work environment" to Officer Lozada (*id*. at ¶ 6); and (6) that she completed two "voluntary statements" against Officer Borden (*id*. at ¶¶ 68-69).

Of these allegations, and viewing the allegations in the light most favorable to Plaintiff, only the complaints to Officer Lozada and Ms. Chichester were arguably related to potential discrimination.   However, Plaintiff has failed to allege facts sufficient to

support the conclusion that she had a good faith, reasonable belief that Ontario County was engaging in an employment practice prohibited by Title VII.  Although "a plaintiff need not establish that the conduct she opposed was in fact a violation of Title VII in order to constitute protected activity," she must have had a good faith, reasonable belief that the underlying actions of the employer violated Title VII. *Monroe v. Xerox Corp.*, 664 F. Supp. 2d 235, 241 (W.D.N.Y. 2009) (quotation omitted).  "[M]ere subjective good faith belief is insufficient[;] the belief must be reasonable and characterized by *objective* good faith." *Kelly,* 716 F.3d at 16 (quotation omitted and emphasis in original).  The reasonableness of the plaintiff's belief is assessed in light of the totality of the circumstances, and "[a] plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Id.* at 14.

Plaintiff has failed to allege facts sufficient to support the conclusion that she had a good faith, reasonable belief that the conduct she complained of to Office Lozada and Ms. Chichester violated Title VII. *See, e.g., Marcus v. Barilla Am. NY, Inc.*, No. 13-CV-6223L, 2014 WL 1123406, at *5 (W.D.N.Y. Mar. 21, 2014) (plaintiff failed to plausibly allege that she had reasonable belief that her complaint pertained to an unlawful employment practice where complaint was related to allegedly "abusive and aggressive behavior" by supervisor).  Prior to making her complaints, Plaintiff alleges only that she was not permitted to take two additional compensated 45-minute breaks per day to express breast milk.  No reasonable employee would have believed she was entitled to such additional compensated breaks under Title VII.  As discussed above, the law is clear and well established that an employer is under no obligation to provide <u>compensated</u>

- 32 -

pumping breaks.   This information is readily available from both the United States Department of Labor and the New York State Department of Labor.

Efforts to secure rights outside of those provided by Title VII do not constitute protected activity.   For example, in *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590 (2d Cir. 1988), the plaintiff had complained that the defendant did not follow its own voluntary affirmative action program in selecting a white woman over several minority applicants.   *Id.* at 594.   The Second Circuit Court of Appeals affirmed a grant of summary judgment in favor of the defendant because affirmative action in employment practices is not required by Title VII and the plaintiff therefore had not complained of an unlawful employment practice.

Plaintiff also has not alleged facts sufficient to support the conclusion that Ontario County knew about her complaints.   In order to plead a retaliation complaint against Ontario County, Plaintiff must allege that Ontario County had "general corporate knowledge" that she engaged in protected activity.   *Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12-CV-4729, 2013 WL 3973168, at *9 (E.D.N.Y. July 30, 2013).   Plaintiff's complaints to her union president and union representative, neither of whom is alleged to have been an employee or agent of Ontario County, do not suffice to allege that corporate knowledge.   *See id.* (plaintiff who alleged that he complained to his union representative had not stated a retaliation claim because there was no allegation that the union representative contacted the employer or that plaintiff made complaints directly to the employer).   Ontario County cannot have engaged in retaliation where it was not aware of Plaintiff's protected activity.

- 33 -

For the foregoing reasons, Plaintiff's proposed amended third cause of action fails to state a claim for retaliation and the amendment would be futile.

### 4.    Equal Protection (§ 1983)

The proposed amended complaint also does not state a § 1983 claim against Ontario County.   Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipal entity may be held liable under § 1983 only where the constitutional violation complained of was caused by a municipal "policy or custom." *Id.* at 694-95.   "To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)).   "'Mere "boilerplate" assertions that a municipality has such a custom or policy, which resulted in a deprivation of the plaintiff's rights, do not rise to the level of plausibility.'" *Roberites v. Huff*, No. 11-CV-521SC, 2012 WL 1113479, at *7 (W.D.N.Y. Mar. 30, 2012) (quoting *Simms v. City of N.Y.*, No. 10 CV 3420(NGG)(RML), 2011 WL 4344215, at *2 (E.D.N.Y. May 19, 2011)).

A plaintiff need not "identify an express rule or regulation" to allege an official policy or custom. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004). A plaintiff may establish an official policy or custom by alleging that: (1) a discriminatory practice of municipal officials was "was so persistent or widespread" that it constituted a custom; (2) a discriminatory practice by subordinate employees was "so

manifest as to imply the constructive acquiescence of senior policy-making officials"; (3) the municipality so consistently "fail[ed] properly to investigate and address allegations of sexual harassment [that the] conduct be[came] an accepted custom or practice of the employer"; or (4) the municipality's failure to train its employees demonstrated "a deliberate indifference to the constitutional rights of those within its jurisdiction." *Id.* (internal citations and quotations omitted).

The proposed amended complaint does not allege that any of the individuals who purportedly discriminated against Plaintiff were final policymakers for Ontario County. Moreover, the proposed amended complaint does not plausibly allege that Plaintiff was deprived of her constitutional rights due to a municipal policy or custom. Plaintiff's boilerplate allegation that "the sexual harassment and retaliation suffered by Plaintiff . . . amounted to a municipal policy due to the failure of the County to take any remedial action whatsoever" (Dkt. 12-2 at ¶96) is wholly unsupported by any factual allegations. *See Piston v. Cnty. of Monroe*, No. 08-CV-6435P, 2012 WL 4490652, at *15 (W.D.N.Y. Sept. 27, 2012) (dismissing § 1983 against municipality where complaint contained only boilerplate allegation that "the sexual harassment [plaintiff] suffered 'amounted to a municipal policy due to the failure of the County to take any remedial action whatsoever'").

"Where a municipality has notice of a pattern of constitutionally offensive acts by its employees, but fails to take any remedial steps in response, the municipality may be held liable for similar subsequent acts, if the inaction is determined to have been the result of deliberate indifference or tacit authorization of the offensive acts. . . ." *Payne v.*

*Cnty. of Nassau*, No. 03-CV-1929(DRH)(JO), 2005 WL 2179419, at *3 (E.D.N.Y. Sept. 9, 2005) (quotations omitted) (dismissing complaint for failure to allege any facts tending to support an inference that municipality was deliberately indifferent to constitutional violations).   Here, the proposed amended complaint contains no allegation that any policymaker for Ontario County had notice of a pattern of constitutionally offensive acts (or of any constitutionally offensive acts whatsoever).   In fact, Plaintiff affirmatively alleges that she did <u>not</u> complain about her alleged mistreatment.   (Dkt. 12-2 at ¶ 42). To the extent that Plaintiff relies upon the allegation that she spoke to her union representatives about Sgt. Tomes' instruction to use her vacation/comp time for additional breaks to express breast milk (*see* Dkt. 12-2 at ¶ 47), as discussed above, Plaintiff had no right to additional paid breaks, and there is no allegation that any agent of Ontario County was aware of Plaintiff's complaints.

Additionally, the Court has already found that Plaintiff has failed to state an underlying § 1983 claim by Officer Borden or Sgt. Tomes.   A plaintiff cannot allege a *Monell* claim where she has not alleged a valid underlying constitutional deprivation. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).   As a result, permitting Plaintiff to amend her complaint to assert a §1983 claim against Ontario County would be futile.

### 5.    Punitive Damages

Plaintiff's proposed "punitive damages" claim is alleged only against Sgt. Tomes and Officer Borden and is defective as a matter of law, as discussed above. *See Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) is granted and Plaintiff's cross-motion for leave to amend is denied.  Defendants' motion to strike paragraphs 10-38 of the complaint is denied as moot.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      August 8, 2014
            Rochester, New York

- 37 -